IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
February 4, 2003 Session

## MELISSA COMBS CRANSTON v. EDWARD SCOTT COMBS

**Appeal by Permission from the Court of Appeals**
**Chancery Court for Montgomery County**
**No. 95-11-0055      Carol Catalano, Chancellor**

---

**No. M2000-02101-SC-R11-CV - Filed June 3, 2003**

---

We granted review to determine whether the Court of Appeals erred in determining that the appellant (father) in this post-divorce case failed to present evidence of a material change of circumstances justifying a change of custody of the parties' two minor children. The Chancellor granted a change in custody from the appellee (mother) after finding that there was a material change in circumstances that presented a substantial risk of harm to the children. A majority of the Court of Appeals reversed, holding that there was no material change of circumstances that presented a threat of substantial harm to the children. After reviewing the record and applying our recent decision in Kendrick v. Shoemake, 90 S.W.3d 566 (Tenn. 2002), we conclude that a material change of circumstances occurred after the initial custody determination and that the modification of custody was in the best interest of the children. Although the Chancellor and the Court of Appeals did not have the benefit of Kendrick in this case, and therefore applied an incorrect legal standard, we affirm the result reached by the Chancery Court. Accordingly, the judgment of the Court of Appeals is reversed, and the judgment of the Chancery Court is reinstated.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals**
**Reversed**

E. RILEY ANDERSON, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and ADOLPHO A. BIRCH, JR., JANICE M. HOLDER and WILLIAM M. BARKER, JJ., joined.

R. Allan Thompson, Clarksville, Tennessee, for the appellant, Edward Scott Combs.

Steven C. Girsky and J. Matthew Miller, Clarksville, Tennessee, for the appellee, Melissa Combs Cranston.

**OPINION**

# BACKGROUND

Melissa Combs Cranston and Edward Scott Combs were married on June 15, 1990. They have two children: a son born in January of 1986 and a daughter born in December of 1992. The mother, Melissa Cranston, filed for divorce in November of 1995 and sought custody of the children, which the father, Edward Combs, did not oppose. Cranston was awarded full custody, with Combs to have reasonable visitation upon at least 24 hours notice.

In January of 1997, Combs filed a petition to change custody or to seek a specific visitation schedule. The petition alleged that the mother, Cranston, had allowed him to see the children only three times despite numerous requests to exercise visitation; that she refused to allow the children to call him at a toll-free telephone number and would not allow him to speak with the children when he called; that she erased phone messages he left for the children; that she reported that he had not called when he had; that she failed to deliver birthday gifts he sent for the children; and that she insisted that the children call her boyfriend "Dad." The parties resolved the dispute in advance of trial by agreeing to a court-ordered visitation plan specifying the days, hours, holidays, spring break, three weeks summer visitation, and a place of exchange. The court order was entered on September 15, 1997.

In July of 1999, Combs filed a second petition for change of custody alleging numerous violations of the visitation order, including that he continued to be denied visitation by Cranston, that he had been denied unmonitored phone calls with the children, that his son had school and disciplinary problems, and that he was concerned about possible threats of violence to his children. Following an evidentiary hearing, the Chancery Court ruled that Cranston's interference with Combs' visitation constituted a material change of circumstances that presented a substantial risk of harm to the children. The Chancellor said:

> From all of the facts that have just been reviewed, the Court does find a substantial risk of harm to the relationship of each child with their father, Mr. Combs, because of the failure of Mrs. Cranston to comply with the order [entered earlier], which was her . . . agreement made necessary by the fact that there had been a previous petition by the father complaining of the same problems. The same problems. That's why this is so serious today.

The Chancellor also made the following detailed findings in this regard:

> [T]here's no question about what rights the father has to have these children and an opportunity to maintain a relationship with them as is his right, but most importantly their right, their right to be with their father to accomplish and maintain a relationship. And the risk of the loss of that relationship is a material change of circumstance.

-2-

That risk is of substantial potential harm to the children that they not have this relationship.

If children could properly grow up without parents, then this wouldn't be a problem. But they cannot. The most important relationship a person has from conception till majority is their relationship with their parents.

Mr. Combs testified that he would leave messages for his children on the answering machine at the mother's home and come to find they didn't get these messages. He said that Mrs. Cranston would pick up the phone sometimes when he was calling and then hang it up on him. That he knew she was listening on some of their conversations, and that in other – on another occasion she wouldn't call the children to the phone. Mrs. Cranston admits she refused to call the children to the phone. She knew where they were. She told us precisely where they were, but she didn't call them to the phone.

Mr. Combs testified he was changing his medical insurance coverage, needed the children's Social Security numbers and that the mother, Mrs. Cranston, refused to provide those numbers. True he didn't explain. But he shouldn't have to. He's the father. And it's that failure to recognize his equal rights as father to have a relationship with these children. That's the problem.

Accordingly, the Chancery Court ordered that custody be granted to the father, Combs, with visitation to Cranston.

A majority of the Court of Appeals reversed the Chancery Court's change of custody ruling, concluding that Cranston and Combs "bickering" over visitation did not constitute a material change of circumstances that presented a threat of substantial harm to the children. Indeed, the majority determined that Combs failed to present evidence "rising to the level of substantial harm" to his son and "no actual evidence of any harm at all" to his daughter. The majority therefore concluded that it was unnecessary to apply a comparative fitness analysis. Special Judge Ash dissented, concluding that the Chancery Court properly found that a material change in circumstances existed and properly applied the comparative fitness analysis.

We granted appellant Combs' application for permission to appeal.

## ANALYSIS

The appellant, Combs, argues that a finding of "harm" is not a prerequisite to changing an initial custody determination under Tennessee law. The appellant also argues that even if a finding

of "harm" is required, the Chancery Court's custody determination should be reinstated because it found a "substantial risk of harm" and concluded that a change of custody was in the best interests of the children.

The appellee, Cranston, argues that the trial court must find "harm" before engaging in a comparative fitness analysis for the purpose of a change in custody determination. The appellee asserts that the Court of Appeals' majority correctly determined that there had been no evidence of a material change in circumstances creating a risk of harm to the children and reversed the Chancery Court's ruling.

Our recent decision in Kendrick v. Shoemake, 90 S.W.3d 566 (Tenn. 2002), resolves the issues before this Court. We held in Kendrick that the modification of a valid order of custody must be based on the "'standard typically applied in parent-vs-parent modification cases: that a material change in circumstances has occurred, which makes a change in custody in the child's best interests.'" Id. at 570 (quoting Blair v. Badenhope, 77 S.W.3d 137, 148 (Tenn. 2002)).[1]

We clarified that this standard requires the trial court to engage in a two-step process to make its final custody determination. First, the court must determine whether a material change in circumstances has occurred after the initial custody determination. Although there are no bright-line rules for determining when such a change has occurred, there are several relevant considerations: (1) whether a change has occurred after the entry of the order sought to be modified; (2) whether a change was not known or reasonably anticipated when the order was entered; and (3) whether a change is one that affects the child's well-being in a meaningful way. Kendrick, 90 S.W.3d at 570; see also Blair, 77 S.W.3d at 150.

Second, after finding that a material change in circumstances has occurred, the trial court must determine whether modification of custody is in the child's best interests using the factors enumerated in Tennessee Code Annotated section 36-6-106 (2001). These factors include:

---

[1] As the parties have noted, the legislature has enacted Tennessee Code Annotated section 36-6-101(a)(2)(B) (2001 & Supp. 2002), which provides:

> If the issue before the court is a modification of the court's prior decree pertaining to custody or a residential parenting arrangement, the petitioner must prove by a preponderance of the evidence a material change in circumstance. *A material change of circumstance does not require a showing of a substantial risk of harm to the child.* A material change of circumstance may include, but is not limited to, failures to adhere to the parenting plan or circumstances which make the parenting plan no longer in the best interest of the child.

(Emphasis added). Although the statute did not become effective until July 15, 2002, *i.e.*, after the proceedings in this case, it reflects that the legislature has likewise clarified that a substantial risk of harm to a child is not required to find a material change in circumstances for the purpose of modifying a custody decree. See Kendrick, 90 S.W.3d at 570 n. 5 (discussing the enactment of Tenn. Code Ann. § 36-6-101(a)(2)(B)).

(1)     The love, affection and emotional ties existing between the parents and child;

(2)     The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;

(3)     The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment . . . .;

(4)     The stability of the family unit of the parents;

(5)     The mental and physical health of the parents;

(6)     The home, school and community record of the child;

(7)     The reasonable preference of the child if twelve (12) years of age or older.  The court may hear the preference of a younger child upon request.  The preferences of older children should normally be given greater weight than those of younger children;

(8)     Evidence of physical or emotional abuse to the child, to the other parent or to any other person . . . .;

(9)     The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child; and

(10)    Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

Tenn. Code Ann. § 36-6-106.


In short, the statutory scheme and our decision in Kendrick provide a flexible framework within which a trial court may consider a number of factors in determining whether to modify a custody decree.  Although evidence of substantial harm or harm to the child is certainly relevant to

the trial court's determination, the analysis to be applied under Kendrick does not require a finding of harm or substantial harm to establish a material change in circumstances.

Accordingly, the Chancery Court and the Court of Appeals' majority applied an incorrect legal standard in determining whether a material change of circumstance had occurred in this case.[2] We believe, however, that the record on appeal and the findings of the Chancery Court are sufficient to apply the appropriate analysis and to determine whether appellant Combs met the applicable burden required for a change in the initial custody order.

First, the Chancery Court's finding that Combs established a material change in circumstances is supported by the record. The Chancellor made extensive findings and cited, among other factors, Cranston's deliberate pattern of consistent interference with Combs' court-ordered visitation rights, Cranston's interference in and monitoring of telephone conversations, Cranston's refusal to allow the children to speak with Combs on the telephone, Cranston's refusal to talk to Combs, Cranston's refusal to provide relevant information to Combs about the children, and Cranston's derogatory remarks about Combs in front of the children.[3] The Chancery Court also found that these factors created a substantial risk of harm to the children. Although such a finding was unnecessary under the appropriate standard, its finding that a material change of circumstances had been established was fully supported by the proof in the record. That is all that is required under the first prong of our analysis in Kendrick. Accordingly, we agree with the determination that a material change of circumstances occurred that affected the well-being of the children in a meaningful way. See Kendrick, 90 S.W.3d at 570.

Second, the Chancery Court's conclusion that a change of custody was in the best interest of the children is also supported by the record. The trial court made the following findings after the evidentiary hearing:

> The father [Combs] has a stable job. The father has remarried.
>
> Mrs. Laura Combs testified that she loves these stepchildren. They go to church together. She respects Mrs. Cranston's position, but she would otherwise take care of these children as though they were her own when they're with him.

---

[2] We recognize that the lower courts did not have the benefit of our decision in Kendrick or the amended provisions of Tennessee Code Annotated section 36-6-101(a)(2)(B) that clarified the existing standard to be applied in these cases.

[3] For example, the Chancery Court found that Cranston had made several derogatory comments about Combs in front of the children, including that he was a "sperm donor" father, had refused to talk to Combs on numerous occasions, was struggling to maintain order in the household, and had altogether missed or cut short Combs' visitation hours with the children.

Mr. Combs testified that they live in a double-wide trailer with separate bedrooms for each child located on six acres of land in the country. That there is a country school that handles K through twelfth grade. The children would ride the bus to school. They'd ride the bus home. Then they would go to his brother and sister-in-law until Mr. and Mrs. Combs returned home from work because both of them work at the same place.

Although the Chancery Court commented that both Cranston and Combs were fit parents, it concluded that Combs was comparatively more fit and that "for the best interests of these two children and to allow them to have an opportunity to establish a relationship with their father, . . . it's for their best interests if the father be awarded custody." Finally, the court concluded that Cranston would have visitation every other weekend, spring break, three weeks in the summer, and half of the year's holidays.

The Chancery Court made these findings after evaluating the testimony and the credibility of each witness during an extensive evidentiary hearing. The findings were based upon the list of relevant considerations for determining best interests and modifying a custody order set forth in Tennessee Code Annotated section 36-6-106. Accordingly, we conclude that the Chancery Court's findings and conclusions are amply supported by the evidence in the record.

## CONCLUSION

After reviewing the record and applying our recent decision in Kendrick v. Shoemake, 90 S.W.3d 566 (Tenn. 2002), we conclude that a material change of circumstances occurred after the initial custody determination and that the modification of custody was in the best interests of the children. Although the Chancellor and the Court of Appeals did not have the benefit of Kendrick in this case, and therefore applied an incorrect legal standard, we affirm the result reached by the Chancery Court. Accordingly, the judgment of the Court of Appeals is reversed and the judgment of the Chancery Court is reinstated. Costs of the appeal are taxed to the appellee, Melissa Combs Cranston.

_____
E. RILEY ANDERSON, JUSTICE