IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 8, 2003 Session

## JENNIFER D. RIAL (HOLLOWAY) v. TERRY RIAL

**Direct Appeal from the Chancery Court for Hickman County**
**No. 9310280      R. E. Lee Davies, Judge**

_____

**No. M2002-01750-COA-R3-CV - Filed August 7, 2003**

_____

Mother petitioned the court for change of child custody.  The trial court found no material change of circumstances justifying such change and dismissed the petition.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DON R. ASH, SP. J., joined.

Timothy V. Potter, Dickson, Tennessee, for the appellant, Jennifer Holloway Rial.

Douglas Thompson Bates, III, Centerville, Tennessee, for the appellee, Terry Rial.

**OPINION**

Jennifer Holloway ("Mother") and Terry Rial ("Father") were divorced in 1993.  The trial court awarded the parties joint custody of their two minor daughters, with Father being the primary custodian.  In May 1998, the trial court denied Mother's December 1997 petition for a change of custody.  In August of 1999, the court modified the visitation schedule set forth in the original custody decree.  Mother again petitioned for a change of custody in September 2001.  A hearing was held in May 2002. The trial court found no material change of circumstances justifying modification of the 1999 order, and by order entered June 2002 denied Mother's petition.  Mother now appeals to this Court.

### *Issues Presented*

Mother raises the following issues for review by this Court:

(I)     Whether the trial court erred by ruling that the evidence did not constitute a "change of circumstances" sufficient to conduct a comparative fitness analysis.

(II)    Whether the trial court erred by reviewing and allowing into evidence Father's secretly obtained audio-taped conversation between Mother and the parties' twelve year old daughter.

## *Standard of Review*

Our review of a trial court's conclusions on issues of law is *de novo*, with no presumption of correctness. *Kendrick v. Shoemake*, 90 S.W.3d 566, 569 (Tenn. 2002). Our review of a trial court's findings on issues of fact is *de novo* upon the record, accompanied by a presumption of correctness unless the evidence preponderates otherwise. *Id.* at 570; Tenn. R. App. P. 13(d). Where the trial court makes no specific findings of fact on a matter, we must review the record to determine where the preponderance of the evidence lies and accord no presumption of correctness to the conclusion of the court below. *Id.*

## *Material Change of Circumstances*

A valid child custody order may be modified where a material change of circumstances has occurred such that a change of custody is in the best interest of the child. *Cranston v. Combs*, — S.W.3d —, 2003 WL 21266696, No. M2000-02101-SC-R11-CV (Tenn. June 3, 2003). Thus the court must utilize a two-part test in determining whether a change of custody is warranted. *Id.* First, it must determine whether a material change of circumstances has occurred that affects the child's well being. *Id.*; *Kendrick*, 90 S.W.3d at 570. Second, if it finds a material change of circumstances, the court must utilize the factors enumerated in Tenn. Code Ann. § 36-6-106 to determine whether a change of custody is in the best interests of the child. *Id.*

The Tennessee Supreme Court has observed that no "bright-line" rule exists for determining whether a material change has occurred. *Id.* The Court has identified several considerations, however, including 1) whether a change has occurred subsequent to the order from which modification is sought; 2) whether such a change was not known or reasonably anticipated when the order was entered; 3) whether the change is one which affects the child in a "meaningful" way. *Id.* The *Cranston* Court specifically disavowed the concept that such a change must pose a threat of substantial harm to the child in order to justify a change of custody. *Id.*

In the case now before us, the trial court determined that there had been no material change of circumstances since 1998 which would justify a change of custody. The trial court accordingly did not reach the question of whether a change of custody would be in the best interests of the children. However, the court made no specific findings of fact in support of its conclusion. In accordance with the standard of review identified above, we must therefore conduct a *de novo* review

of the record to determine whether the preponderance of the evidence supports the determination of the trial court, with no presumption of correctness afforded to the trial court's conclusion.

Mother argues that material changes in circumstance since May 1998 include: 1) frightening episodes of "out of control" temper by Father; 2) extreme corporal punishment/unjustified corporal punishment by Father; 3) unjustified and extreme non-corporal punishment; 4) over-reaction by Father to various incidents; 5) racist remarks and attitudes by Father; 6) co-habitation by Father with his girlfriend, whom he married less than one month before the hearing of the petition; 7) over-crowding of Father's home, which is now shared by his wife and her two children; 8) an observation by the children of sexual relations between Father and his present wife, who sleep on a couch in the living room as a result of overcrowded living conditions; 9) Father has allowed the 12-year old daughter to drive, unsupervised, to the neighborhood store; 10) Father and his wife have experienced marital difficulties, resulting in Father's temporary removal of himself and the children from the home; 11) corporal punishment of the children by Father's wife; 11) derogatory statements about Mother by Father; 12) interference by Father with Mother's involvement in the children's activities; 13) the girls have difficulty communicating with Father; 14) the girls have expressed a preference to live with Mother. The record also contains a recording of telephone conversations between Mother and the elder daughter which were made without the knowledge or consent of Mother. Mother submits that she and the children have a close relationship and that they have expressed a strong preference to reside with her.

The order entered by the court in 1998 required Mother and Father to attend a parenting apart seminar. Father attended the seminar. Mother failed to attend, and testified that her previous attorney failed to communicate the arrangements with her. Mother's testimony reflects that Mother and Father both reside in the homes where they resided in 1998; that Mother allows the children to dress less modestly than Father permits; that Mother has permitted and encouraged the children to mislead Father about their smoking; that Father's wife has in fact been an asset in the relationship between Father and Mother, as Mother and she communicate better than do Father and Mother.

After reviewing the record, we believe that both Mother that Father have, on some occasions, made extremely poor judgments. However, we do not believe that Father presents a danger to the children, as Mother contends. While Father admits to corporal punishment of the girls, he denies the incidents of extreme temper and corporal punishment. Mother's own testimony presents them as isolated, single incidents. Assuming Mother's testimony is true, although such behavior by Father is neither advisable nor commendable, it does not create a material change of circumstances justifying a change of custody. Mother and Father acknowledge that they have difficulty communicating, and Mother's testimony indicates that Father's wife has been an asset in this regard. It is also evident that both Mother and Father have encouraged the children to lie.

Ashton Rial (Ashton), age eleven, testified that Father "gets mad easily." She further testified that he was "a little weird" and that, as an example, he once become so angry with her that he picked up the coffee table and " hit his head on the coffee table and broke it in half and broke the leg off, and then he went and hit his head on the wall and, you know, that was pretty scary." Ashton

also testified to being whipped with a belt about three years ago, when Father became angry and frustrated over her inability to do a homework assignment, and again a few month ago, when she continued to swing from her canopy bed after Father had told her stop. When asked by the court whether Father had "ever done anything else besides whipped you with a belt when he's disciplined you," Ashton replied, "No, Sir." Ashton also testified that her sister was disciplined less often because "she's a lot nicer."

Ashton testified that Father calls Mother a liar, but further testified that the children were able to contact their Mother by telephone whenever they wanted. She testified that Father allowed the children to drive on the dirt road near their home, and that her sister was allowed to drive without Father being in the car; that he has more strict rules than Mother about the type of clothing they are allowed to wear; and that he has very strict rules about the girls achieving good grades in school. Ashton testified that Father "has a problem with black people that he doesn't know;" that he refers to African-Americans in derogatory terms; that he objected to Mother taking the girls to an African-American dentist; and that he had told the girls that if they attended the school near Mother they would be beaten up by African-American students. Ashton testified that Father's wife had slapped her, but that she had not told Father.

Morgan Rial (Morgan), who was twelve at the time of the hearing, testified that she found it easier to talk to her Mother than her Father, and that her "dad gets upset very easily sometimes." Morgan also testified regarding the coffee table incident and the whipping of Ashton over a homework assignment. Morgan testified that she was not whipped often because she does not misbehave a lot. She further stated that Father does not always discipline by whipping the children, that he "usually just grounds us or something." When asked by the court if she thought Father was fair, Morgan stated, "he's fair but sometimes I think he gets too tough on it sometimes. He doesn't want us to make anything below a 90 [in school], and I don't find that wrong or anything but sometimes I find it really hard to make 90's and above all the time." She stated that a grade of a "C" had resulted in a grounding and two hours of studying a night until the grade was brought up. Morgan testified that Father's wife had never whipped or struck her, but that she thought she had struck Asthon once.

Morgan testified that she and Father's wife got along most of the time and that Father helped with homework when asked. She testified that Father sometimes allowed her to drive about four miles to the store without him in the car.

After reviewing the entire record in this case, and the testimony of the children in particular, we agree with the trial court that there has been no material change of circumstance which would justify a change of custody. Mother has failed to carry her burden of proof on this issue. We accordingly affirm the judgment of the trial court. We further affirm the order of the trial court requiring Father and the children to participate in family counseling; prohibiting Mother and Father from speaking ill of the other in the presence of the children; requiring Mother to participate in the parenting apart seminar; and prohibiting Father's wife from engaging in corporal punishment of the children.

-4-

It is clear to this Court that Father and Mother have extreme difficulty in communicating and that they make little effort to do so. It is also evident that Father and Mother make very little effort to overcome their hostility toward each other or to guard against exposing their children to it. This conduct simply is not in the best interests of these children.

We urge both parents to strive to conduct themselves in a more civil, amicable manner in consideration of the well-being of their children. Although we do not condone Father's sometimes extreme outbursts of temper, we note that they occurred several years ago as isolated incidents. While we make no comment on the propriety of spanking, we remind the parties that corporal punishment is not without limit. We also caution Father against permitting any unlicensed person to drive. We remind the parties that the courts are not without recourse to remove the children from the home of either parent upon a finding of neglect or abuse.

Mother additionally raises the issue of whether the trial court erred by admitting into evidence a secretly audio-taped conversation between Mother and one of the children. The propriety of admission of this evidence is not relevant to the threshold question of whether a material change of circumstance has occurred. The issue accordingly is pretermitted. The order of the trial court is affirmed. Costs of this appeal are taxed to the appellant, Jennifer Holloway, and her surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE