IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 18, 2006 Session

## KERRY C. LYONS v. GREGORY M. LYONS

**Direct Appeal from the Circuit Court for Shelby County**
**No. 153643-4 R.D.      Rita L. Stotts, Judge**

———

**No. W2004-02907-COA-R3-CV - Filed March 21, 2006**

———

The trial court determined a material change of circumstances had occurred which  warranted modification of the parties' child visitation scheduled.  Father appeals.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, joined.

John N. Bean, Memphis, Tennessee, for the Appellant, Gregory M. Lyons.

Stacy Alane Clinton, Memphis, Tennessee, for the Appellee, Kerry C. Lyons.

**MEMORANDUM OPINION**[1]

        This appeal arises from the trial court's order modifying child visitation.  Kerry C. Lyons ("Mother") and Gregory M. Lyons ("Father") were married in 1978 and divorced in 1997.  Mother and Father have two children together, one of whom ("Daughter") is the subject of this action.  By consent order entered in October1999, the parties were awarded joint custody of Daughter, with Mother named primary custodial parent with final decision-making authority.  By agreement, Father was to have liberal visitation, including every other week beginning on Sunday at noon.  Father and Mother are both registered nurses.  Father was single when the order was entered in October 1999,

[1]**RULE 10. MEMORANDUM OPINION**
        This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

but married his current wife, Patty, in December 1999. He works twelve-hours shifts on Fridays, Saturdays, and Sundays, 7:00 PM until 7:00 AM, and occasionally an additional eight-hour shift. During the weeks he had visitation with Daughter, Father did not work the Sunday shift. Prior to separating from Father, Patty cared for Daughter while Father was at work. Father separated from Patty in late 2003. After the separation, the parties' adult son cared for Daughter at Mother's home while Father worked.

In February 2004, Mother filed a petition to modify visitation. In her petition, Mother alleged that Father had "a history of taking the minor child and withholding the minor child . . . each time any action is initiated." She alleged that such incidents included taking the child to New Mexico for five months after the parties had separated. She further alleged that Father had separated from Patty, and that Father had been physically and verbally abusive to Daughter, causing fear and emotional and psychological harm. Mother additionally alleged that she had discovered that Father had been investigated for misconduct at the hospital where he worked. At Mother's request, the trial court issue an *ex parte* temporary restraining order preventing Father from having visitation with Daughter unless supervised by a third party of Mother's choosing.

The trial court heard this matter in April 2004. Over Father's objection, Mother called Sharon Greggs (Ms. Greggs), a manager in father's unit at Baptist Hospital, to testify. Ms. Greggs testified that Father was investigated as part of an internal review arising from an action alleging sexual misconduct filed against the hospital, and that no disciplinary action was taken against Father.

By order entered May 26, 2004, the trial court reduced Father's visitation with the parties' minor child from every other week to every other week from noon on Sunday to 6:00 PM on Tuesday. In its order, the trial court stated: "There exists a material change of circumstance due to the Respondent's separation from his current wife." On June 24, 2004, Father filed a motion for additional findings of fact or to alter or amend the judgment, asserting he and Patty had reconciled on approximately May 21, 2004. In October 2004, Mother moved the court to correct its order, contending that the material factors considered by the court consisted of more than Father's separation from Patty. In October 2004, the trial court denied Father's motion for additional findings or to alter or amend the judgment. In February 2005, the trial court amended its order to add, as additional material changes, "how the child has been affected by the things going on with her which may be impacting some of her feelings about a lot of things." The trial court also ordered counseling for Daughter. Father filed a timely notice of appeal to this Court. We affirm.

### *Issues Presented*

Father presents the following issues for our review, as we re-state them:

(1)     Whether the trial court erred in finding a material change in circumstance warranting modification of the October 1999 visitation agreement.

(2)     Whether the trial court erred in allowing Ms. Greggs to testify where Mother had not listed her as a person with knowledge in her answers to interrogatories.

### *Standard of Review*

Our review of a trial court's conclusions on issues of law is *de novo*, with no presumption of correctness. *Kendrick v. Shoemake*, 90 S.W.3d 566, 569 (Tenn. 2002). Our review of a trial court's findings on issues of fact is *de novo* upon the record, accompanied by a presumption of correctness unless the evidence preponderates otherwise. *Id.* at 570; Tenn. R. App. P. 13(d). Where the trial court makes no specific findings of fact on a matter, we must review the record to determine where the preponderance of the evidence lies and accord no presumption of correctness to the conclusion of the court below. *Kendrick*, 90 S.W.3d at 570.

### *Material Change of Circumstances*

A valid child custody or visitation order may be modified where a material change of circumstances has occurred such that a change is in the best interest of the child. Tenn. Code Ann. § 36-6-101(a)(2)(C) (2005). Thus, the court must utilize a two-part test in determining whether a change of custody or visitation is warranted. First, it must determine whether a material change of circumstances has occurred that affects the child's well being. Second, if it finds a material change of circumstances, the court must utilize the factors enumerated in Tenn. Code Ann. § 36-6-106 to determine whether a change of custody is in the best interests of the child. *Cranston v. Combs*, 106 S.W.3d 641, 644 (Tenn. 2003)(citations omitted).

The Tennessee Supreme Court has observed that no "bright-line" rule exists for determining whether a material change has occurred. *Id.* The court has identified several factors for consideration, however, including 1) whether a change has occurred subsequent to the order from which modification is sought; 2) whether such a change was not known or reasonably anticipated when the order was entered; 3) whether the change is one which affects the child in a meaningful way. *Id.* (citations omitted). The *Cranston* court specifically disavowed the concept that such a change in circumstance must pose a threat of substantial harm to the child in order to justify a change of custody. *Id.* at 645.

In the present case, Mother asserts Father has a history of abusive behavior toward Daughter and she is fearful of Daughter being in Father's home unsupervised and without Patty to act as a "buffer." She also asserts that Patty's health has deteriorated to the point that she has hallucinations and cannot be this buffer. Mother additionally contends that the relationship between her and Father has deteriorated such that the current visitation arrangement is no longer workable.

Father asserts that his status as a single parent at the time of trial was identical to his status as a single parent when the original custody and visitation order was entered in October 1999. He contends that, accordingly, the trial court erred in determining a material change in circumstance had

occurred. On the other hand, Father moved the trial court to amend its order because he and Patty had reconciled, thereby removing the change in circumstance found by the court. Thus, on one hand, Father asserts no material change in circumstances occurred where he was a single parent in October 1999 and in April 2004. On the other hand, Father moved the trial court to amend its order on the grounds that no material change existed where he had reconciled with Patty in May 2004. We find Father's argument to be inconsistent, at best.

As this Court has observed, events and lives do not stand still between court orders. *In re E.J.M.*, No. W2003-02603-COA-R3-JV, 2005 WL 562754, at *20 (Tenn. Ct. App. Mar. 10, 2005) (*no perm. app. filed*) (quoting *Gorski v. Ragains*, No. 01A01-9710-GS-00597, 1999 WL 511451, at *4 (Tenn. Ct. App. July 21, 1999)). Since entry of the original visitation schedule in October 1999, Father married Patty in December 1999 and separated from her in December 2003. All parties agree Patty was an important factor in the custody/visitation arrangement, and Patty cared for Daughter while Father was at work in the weeks Father had visitation with Daughter. As the trial court noted, moreover, this is a rare case in which the stepparent is portrayed not as the "step monster," but as loving and caring. At the time this matter was heard, Father and Patty were separated and Daughter was cared for by her brother in Mother's home while Father worked during his visitation weeks.

Undisputedly, Patty has been a positive element in this equation. Unfortunately, however, although Father asserts he and Patty have reconciled, Patty is undisputedly gravely ill with sickle cell disease which, according to Father, is progressively worsening. She also suffers damage to her brain tissue, which affects her cognitive ability. Additionally, Patty has recently suffered hallucinations, causing her on one occasion to attempt to attack imagined intruders in a closet with a baseball bat. Father's deposition testimony was that Patty's behavior began to get "toward the violent point" in November 2003.

The evidence in this case does not preponderate against the trial court's determination that a material change of circumstance has occurred. We must next consider, however, whether a change in visitation is in Daughter's best interest. The guardian ad litem in this case recommended that Daughter live more permanently with Mother and that Father's visitation be reduced. The guardian ad litem testified that Father's home was "a place where you can feel the discord, the separation, the sadness," and that, compared to Mother's home, it was "depressing." She also testified that Mother's home was "warm and loving." Additionally, Mother testified that Daughter was emotionally upset by the visitation schedule and that she did not want to spend the week with her Father. Her testimony that Daughter had begun to suffer chronic headaches, nausea, and vomiting as a result of the emotional trauma was uncontroverted. In light of Mother's testimony and the testimony of the guardian ad litem, we cannot say a modification of the visitation schedule is not in Daughter's best interest.

We next turn to Father's assertion that the trial court erred by allowing Ms. Greggs to testify. Ms. Greggs' testimony reveals only that Father was investigated as part of a general internal investigation arising from an action by a patient against the hospital, and that Father was not

disciplined in any way as a result of this investigation. Her testimony was not necessary to the determination of the trial court, and is not relevant to our review. Assuming, without holding, that the trial court erred by permitting Ms. Greggs to testify, the error was harmless.

### *Holding*

In light of the foregoing, the judgment of the trial court is affirmed. Costs of this appeal are taxed to Appellant, Gregory M. Lyons, and to his surety, for which execution may issue if necessary.

_____

DAVID R. FARMER, JUDGE