IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 23, 2006 Session

**TAMMY KAY JOINER v. JAMES ALDEN GRIFFITH**

**Appeal from the Juvenile Court for Montgomery County**
**No. 98-235     Wayne C. Shelton, Judge**

**No. M2004-02601-COA-R3-CV - Filed on July 31, 2006**

PATRICIA J. COTTRELL, J.,concurring.

The majority opinion and some of the participants in this matter have placed significant emphasis on the best interests of the child prong of the modification analysis. In my opinion, a more rigorous analysis of the first prong, *i.e.*, whether there was a material change in circumstances, is in order since that finding is a pre-requisite to consideration of best interest.

Once a valid order of custody or residential parenting schedule has been entered, the party petitioning to change that order must prove both that a material change of circumstances has occurred and that a change of custody or residential schedule is in the child's best interest. *Kendrick v. Shoemake*, 90 S.W.3d 566, 575 (Tenn. 2002). Such determinations involve a two-step analysis. *Cranston v. Combs*, 106 S.W.3d 641, 644 (Tenn. 2003); *Kendrick*, 90 S.W.3d at 570. Only after a threshold finding that a material change of circumstances has occurred is the court permitted to go on to make a fresh determination of the best interest of the child. *Kendrick*, 90 S.W.3d at 569; *Blair v. Badenhope*, 77 S.W.3d 137, 150 (Tenn. 2002); *see also* Tenn. Code Ann. § 36-6-101(a)(2)(B), (C).

In determining whether such a change of circumstances has occurred, the court should consider several relevant factors, *Blair*, 77 S.W.3d at 150, including (1) whether the change has occurred after the entry of the order sought to be modified; (2) whether a change was not known or reasonably anticipated when the order was entered; and (3) whether a change is one that affects the child's well-being in a meaningful way. *Cranston*, 106 S.W.3d at 644 (citing *Kendrick*, 90 S.W.3d at 570; *Blair*, 77 S.W.3d at 150). As the statute and case law now make clear, a material change of circumstance does not require a showing of a substantial risk of harm to the child. Tenn. Code Ann. § 36-6-101(a)(2); *Cranston*, 106 S.W.3d at 64; *Kendrick*, 90 S.W.3d at 570. Additionally, "a parent's change in circumstances may be a material change in circumstances for the purposes of modifying custody if such a change affects the child's well-being." *Kendrick*, 90 S.W.3d at 570.

The General Assembly has also weighed in on the material change of circumstances requirement. The relevant statute, Tennessee Code Annotated § 36-6-101(a)(2)(C)[1], provides in pertinent part:

> If the issue before the court is a modification of the court's prior decree pertaining to a residential parenting schedule, then the petitioner must prove by a preponderance of the evidence a material change of circumstance affecting the child's best interest. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance for purposes of a modification of a residential parenting schedule may include, but is not limited to, significant changes in the needs of the child over time, which may include changes relating to age; significant changes in the parent's living or working condition that significantly affect parenting; failure to adhere to the parenting plan; or circumstances which make the parenting plan no longer in the best interest of the child.

In this case, the trial court found there had been a material change of circumstances. However, the trial court did not specifically identify that change. The father posits that the change of circumstances was the mother's "wrongful" accusation of sexual abuse, compounded by her continued reliance on an affidavit that had been disavowed. The majority herein agrees with the father's interpretation, stating that the trial court found that the mother's conduct constituted a material change in circumstances.

I agree that, reading the order in its entirety, the change of circumstance found by the trial court was the determination that the mother had wrongfully accused the father. The trial court made specific findings that the father was wrongfully accused of child sexual abuse and also discussed the damaging results of such a wrongful allegation. The court also stated that it had limited the father's visitation based on the affidavit of Nancy Conley that was later disavowed by her.

From my review of the record, I must conclude that there are several problems with the trial court's conclusion regarding the mother's conduct. The first is the significance given to the corrections to the Conley affidavit and the consequences imposed.

The trial court was mistaken in stating that it had limited the father's visitation to supervised visits on the basis of the Conley affidavit filed with the petition. The record makes it clear that the order limiting the father to supervised visits in his home or his parents' home was the result of DCS's intervention in the case and its request for a safety plan that included that limitation. The parties agreed to the proposed safety plan, and when disputes arose over compliance, the court followed DCS's recommendations where relevant. After DCS notified the court that it no longer had any objection to unsupervised visits with the father, those visits resumed. There is nothing in this record to indicate that DCS relied on the Conley affidavit at all in reaching its decision to start an investigation and implement a safety plan.

---

[1] 2004 Tenn. Pub. Acts, ch. 759 (effective May 24, 2004).

Consequently, the record contradicts the contention that the Conley affidavit had any role in the limitation of the father's visitation. Additionally, it is not exactly accurate to state that Ms. Conley later disavowed the affidavit. To the contrary, she testified at trial that she still agreed with the affidavit except for the specific corrections or clarifications she made. In fact, she specifically testified that she believed the child had been subject to inappropriate sexual behavior and contact, and therefore sexually abused, while the child was in the father's house and under the father's care.

The primary mistake in the affidavit, from Ms. Conley's viewpoint, was in the portion dealing with the diagnosis of H influenza, in that the affidavit implied that she was testifying as to the likely cause of the infection when, in fact, she did not have the medical knowledge needed to make that kind of judgment.

With regard to that portion of the affidavit, almost immediately, the father disputed the medical information about transmission of the disease by filing with his original response an affidavit from a psychiatrist and pediatrician who questioned whether the infection was correctly diagnosed and whether Ms. Conley was qualified to opine on how the diseases is transmitted.[2]

It appears to me: (1) that Ms. Conley reaffirmed, rather than disavowed, the most relevant portions of the affidavit - specifically that the child had been exposed to inappropriate sexual conduct and touching; (2) that the father immediately questioned the subsequently disavowed part with an expert affidavit; and (3) that the affidavit was not, as the father argues, the "pillar" of the decision to impose only supervised visitation pending the outcome of the DCS investigation, to which the father agreed in any event. To the extent the Conley affidavit and its clarifications were the basis for the finding that mother's "wrongful" conduct was a material change of circumstances, I must respectfully disagree with that finding.

The father sought modification of the existing parenting arrangement. Consequently, he had the burden of proving by a preponderance of the evidence that a material change of circumstances had taken place. His counterclaim for modification was based on his assertion that the mother initiated these proceedings solely for the purpose of interfering with his visitation and made allegations she knew to be unfounded. In my opinion, he did not meet his burden of proving his assertion.

The child exhibited sexualized behaviors and she made statements indicating inappropriate activities occurring in the father's house. Although the mother asked the father to investigate the situation in his house, he refused to give any credence to the mother's concerns and declined to check into it. The mother took the child to counseling; the counselor was sufficiently alarmed that

_____

[2]The evidence adduced at trial shows that the child had been diagnosed in May with H influenza in her vaginal area by her primary care physician. At trial, an expert on H influenza testified that it is transferred from person to person by exchange of mucousal membranes. He stated that vaginal infection with H-influenza is rare and is especially rare in a child. He testified that there are typically three causes of such an infection: improper hygiene, presence of a foreign object, or some kind of oral contact with the genitals including a sexual abuse scenario.

she reported potential sexual abuse to DCS. I cannot conclude that anything about the mother's conduct at that point was "wrongful."

The mother's petition alleged that the father had refused to help "investigate/correct and assess" the situation in his household that resulted in or contributed to the child's exposure to inappropriate sexual activity and potential abuse and that he failed to acknowledge the situation or to assist in getting counseling for the child. All these allegations were supported by the evidence at the trial.

The two professionals who dealt with the child concluded that the child had been the victim of inappropriate sexual conduct, including inappropriate touching by a teenage boy, while at the father's house. DCS continued its investigation as to that boy.[3] The two counselors also recommended that the child receive counseling. Father himself testified that he originally did not put credence in the mother's original concerns, did not think anything had happened to the child in his house, and did not think therapy or counseling was needed. By the time of trial, he acknowledged that it was possible that K. had touched the child inappropriately and/or otherwise engaged in sexual conduct toward her, but even late in the counseling sessions, he indicated he did not believe further counseling was appropriate or needed.[4]

In summary, the mother's allegation against the father was that he essentially failed to protect the child from exposure to inappropriate sexual activity. The father did not prove that these allegations were made knowing they were false or for an improper motive. Consequently, I would find that the father did not prove that a material change of circumstances had occurred on the basis of the mother taking the child to a counselor under the circumstances existing, which is the action by the mother that triggered the DCS investigation and the imposition of supervised visitation.

This case was presented from two very different perspectives. On the one hand, the father portrayed the mother as bringing claims of sexual abuse that she knew to be unfounded as a way to interfere with the father's visitation and relationship with the child. On the other hand, the mother portrayed herself as responding to behaviors and statements by the child, as well as the counselor's recommendation, and to the father's refusal to either investigate whether something inappropriate happened in his home or to cooperate in dealing with the issues presented. A thorough review of the pleadings and other filings as well as the testimony shows, predictably, that the picture is not so clear cut as either parent perceives it to be.

---

[3] Because the boy had moved out of state, the investigation was stalled at last report.

[4] The counselors' testimony is consistent with the father's. The father brought the child to one session in March and talked to Ms. Conley and Mr. Kennington. He questioned whether the child needed therapy and also did not indicate he believed the brother's friend or anyone else had done anything inappropriate to the child. Even as late as March or April of 2004, the father continued to state that he did not believe the child needed therapy. He thought discontinuing the therapy would be a good idea. At a late stage in the assessment, the father told Mr. Kennington that he respected Mr. Kennington's opinion that something had indeed happened to the child.

While I cannot agree, based on my review of the record, that the mother's actions that resulted in these proceedings can be characterized as wrongful, I do not disagree that a material change of circumstances was shown. The majority opinion mentions the trial court's findings that the mother had demonstrated emotional instability and open hostility toward the father. Because the outcome of this case depended to a great degree on the trial court's assessment of the parties' credibility and because a material change of circumstances can include a parent's attempts to interfere with a child's relationship with the other parent, changes in either parent's parenting ability, or any other circumstance rendering the original parenting plan no longer in the child's best interest, I agree that the evidence does not preponderate against the trial court's finding that there was a material change of circumstance.

_____
PATRICIA J. COTTRELL, JUDGE