IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 17, 2003

## MARY ANN GURGANUS EURE v. BARRY LYNN EURE

**Appeal from the Circuit Court for Bradley County**
**No. V-99-012     Lawrence H. Puckett, Judge**

**Filed December 19, 2003**

---

### No. E2003-00745-COA-R3-CV

---

This is a post-divorce modification case involving the custody of, and support for, the parties' minor child, Matthew Chandler Eure (DOB:  July 22, 1996) ("the child").[1]  Mary Ann Gurganus Eure ("Mother") filed a complaint seeking custody of the child.  Barry Lynn Eure ("Father"), the child's custodian, answered and filed a counterclaim seeking an increase in Mother's weekly child support obligation.  Following a hearing, the trial court denied Mother's complaint.  The court subsequently increased Mother's support obligation to $113 per week.  Mother appeals, arguing, in so many words, that the evidence preponderates against both of the trial court's rulings.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ., joined.

Lisa Z. Espy, Chattanooga, Tennessee, for the appellant, Mary Ann Gurganus Eure.

M. Drew Robinson, Cleveland, Tennessee, for the appellee, Barry Lynn Eure.

### OPINION

I.

The parties were divorced by judgment entered by the trial court on May 26, 1999.  The judgment incorporated the announced agreement of the parties.  The judgment provides, among other things, that Father "is granted custody of the minor child."

---

[1]The parties' other child had reached the age of majority prior to the time of the hearing below.

II.

The parties' competing claims for modification were heard by the court at a bench trial on September 17, 2002. The parties were the only witnesses.

Mother testified that she had made many unsuccessful attempts to communicate with the child by telephone. She stated that, beginning in 2000 and continuing to the date of the hearing, she either got no answer or an answering machine 140 times when she tried to reach the child at Father's residence. She said she never received any returned calls from her son. She blamed Father for the child's failure to return her calls.

Mother also testified that Father had deprived her of visitation on a total of eight occasions in the years 1999 and 2000. She complained that Father insisted she deal with his wife regarding matters pertaining to the child. She told the court that Father on numerous occasions refused to cooperate with her regarding visitation and the rescheduling of missed visitation. She also suggested that Father had told school officials not to release the child's records to her. She testified further that Father had failed to give the child letters she had written to him.

In his testimony, Father refuted each of Mother's charges, either by way of outright denials or by advancing reasonable explanations for his conduct.

III.

The trial court rendered its opinion regarding Mother's complaint from the bench. In denying Mother's request to change the child's custody, the court said the following:

> . . . I understand what I'm being asked to do is to change the primary residential parent in this case, and there has to be a material change of circumstance. I'm not convinced that there is such a change in circumstance based upon the pattern of conduct I have had in Court here today revealed through the proof that would warrant any change in that primary residential parenting status, . . .

IV.

The issues raised by Mother – both of which involve factual determinations made by the trial court – bring into play the standard of appellate review set forth in Tenn. R. App. P. 13(d). Our review is *de novo* on the record of the proceedings before the trial court. *Id*. The record comes to us accompanied by a presumption that the trial court's factual findings are correct, a presumption we must honor unless the evidence preponderates to the contrary. *Id*.

In applying our standard of review, we are mindful of the well-established principle that the trial court is in the best position to assess the credibility of the witnesses; accordingly, such

determinations are entitled to great weight on appeal. ***Massengale v. Massengale***, 915 S.W.2d 818, 819 (Tenn. Ct. App. 1995); ***Bowman v. Bowman***, 836 S.W.2d 563, 566-67 (Tenn. Ct. App. 1991).

## V.

Mother urges us to hold that the evidence preponderates against the trial court's determination that she failed to prove a material change in circumstances justifying a change in the identity of the child's primary residential custodian.

The Supreme Court recently addressed the concept of a change in circumstances in a case involving a complaint seeking to modify an earlier custody determination:

> Our recent decision in ***Kendrick v. Shoemake***, 90 S.W.3rd 566 (Tenn. 2002), resolves the issues before this Court. We held in ***Kendrick*** that the modification of a valid order of custody must be based on the "'standard typically applied in parent-vs-parent modification cases: that a material change in circumstances has occurred, which makes a change in custody in the child's best interests.'" ***Id***. at 570 (quoting ***Blair v. Badenhope***, 77 S.W.3d 137, 148 (Tenn. 2002)).

***Cranston v. Combs***, 106 S.W.3d 641, 644 (Tenn. 2003).[2] The Supreme Court noted that the first inquiry in such a case is whether the requisite change in circumstances has occurred:

> First, the court must determine whether a material change in circumstances has occurred after the initial custody determination. Although there are no bright-line rules for determining when such a change has occurred, there are several relevant considerations: (1) whether a change has occurred after the entry of the order sought to be modified; (2) whether a change was not known or reasonably anticipated when the order was entered; and (3) whether a change is one that affects the child's well-being in a meaningful way. ***Kendrick***, 90 S.W.3d at 570; *see also* ***Blair***, 77 S.W.3d at 150.

***Id***.

## VI.

In the case at bar, the trial court denied Mother's request, finding that she had failed to prove a change in circumstances warranting a new look at the issue of who should be the child's primary

---

[2]Tenn. Code Ann. § 36-6-101(a)(2)(B) (Supp. 2003) effective July 15, 2002, is applicable to the instant case. The holding in ***Cranston*** is consistent with this statutory provision. ***Cranston***, 106 S.W.3d at 644, n.1.

residential custodian. The trial court did not elaborate as to why it felt there had been a failure of proof. It is not clear whether the trial court concluded that Father was the more credible of the two witnesses; or whether the court determined that Mother's complaints regarding visitation and related matters, even if true or partially true, were insufficient in law to establish the threshold requirement of a change in circumstances. In either event, it is clear to us that the trial court did not find a change "that affects the child's well-being in a meaningful way." *Cranston*, 106 S.W.3d at 644.

This case is a classic "she said, he said" case. There were no other witnesses nor were there any "smoking gun" type documents. Considering the totality of the proof and the trial court's primary role in assessing credibility, we are unable to say that the evidence preponderates against the trial court's finding that Mother failed to show a change in circumstances warranting a new custody determination. Thus, we must honor the presumption of correctness mandated by Tenn. R. App. P. 13(d) and affirm the trial court's decision denying Mother's request for a change of custody.

VII.

Mother also complains on appeal that the trial court erred when it increased her child support obligation from $85 per week to $113 per week. She asserts that this was error because, according to her, the evidence does not reflect a "significant variance," as defined in the Child Support Guidelines,[3] "between the guidelines and the amount of support currently ordered." Tenn. Code Ann. § 36-5-101(a)(1) (2001 & Supp. 2003).

As previously noted, the initial merits hearing in this modification case (and perhaps the only such hearing) occurred on September 17, 2002. At that hearing, the only evidence pertaining to Mother's income came from the following testimony offered by her:

> Q. All right. Now, the next allegation is, is that you've had two pay raises since we were here in '99, and that you have another raise that you got in July of 2001. Well, here we are in 2002. Will you please review your most recent pay stub and tell the Court what you made per hour?
>
> A. They do it by 40 hours, and you have to divide that into 40 hours to see what you made per hour.
>
> Q. Did you recently get a raise?
>
> A. They are supposed to give us one in every May. I've got the papers in here.

---

[3]*See* Tenn. Comp. R. & Regs., ch. 1240-2-4-.02(3).

Q.  Did you get a printout from your employer that shows what your hourly wage was in 1999 when you got divorced?

A.  Yes.

Q.  And what was it then?

A.  13.09.

Q.  13.09 an hour. And that's when your child support was set?

A.  Yes.

Q.  And as of May 2001, you were making 14.09 an hour. Is that correct?

A.  Yes.

Q.  So as of May of 2002, you may have gotten a 3 percent increase?

A.  Yes.

Q.  And we have the card stub here to show what it is.

MS. ESPY [attorney for Mother]: But I'll have to calculate that, Your Honor. I'm sorry, it's not on the stub. We have discussed getting the most current payroll information together. I say there's not a 15 percent increase. I'll get this stub to Mr. Robinson, and if there's not any –

MR. ROBINSON [attorney for Father]: (Interposing) There's not any objection.

MS. ESPY: 15 percent, we won't change it depending on the Court's ruling with your agreement, Your Honor.

By MS. ESPY:

Q.  And did you also provide your earnings for 2002 and 2001?

A. Yeah.

Other than this testimony, there is no proof before us pertaining to Father's request for more child support. While the quoted testimony, standing alone, might be sufficient to show that the necessary "significant variance" was not present in this case, the procedural history of this case, following that testimony, mandates that we uphold the trial court's decree increasing child support.

On February 18, 2003, the trial court entered its order denying Mother's request for a change of custody. That order also recites the following:

> The petitioner, Mary Ann Gurganus Eure, is to provide, through her attorney, her 2002 income information to counsel for the respondent, Barry Lynn Eure, and the support is to be adjusted, if necessary, pursuant to the Tennessee Child Support Guidelines.

The order concludes by stating that "the Permanent Parenting Plan ["the PPP"] attached hereto is hereby incorporated into this order." The PPP attached to the order is signed by counsel for both of the parties and states that Mother's prospective child support obligation is set at $113 per week.

The PPP in the record recites that it was "[p]resented by [c]ounsel." The only reasonable interpretation of the record is that Mother, through her counsel, *agreed* to a permanent parenting plan calling for a child support payment of $113. There is nothing in the PPP, or the record as a whole, reflecting that Mother objected to child support being set at this increased level. While the issue was properly raised in Mother's answer to Father's counterclaim, the record supports the conclusion that Mother waived her lack-of-a-significant-variance defense when she agreed to the PPP reflecting the increase in child support.

In her brief, Mother asserts that there was a second hearing on February 18, 2003; maybe so, but there is nothing in the record to support this assertion. If such a hearing was held, it almost certainly pertained to the issue of child support – the only open issue following the trial court's oral pronouncement of September 17, 2002, denying Mother's request for a change of custody. Thus, assuming Mother's assertion is correct, we are presented with the fact of a hearing addressing child support for which we do not have a transcript or statement of the evidence. "[W]e must assume that the record, had it been preserved, would have contained sufficient evidence to support the trial court's factual findings" pertaining to the court's decision to increase Mother's child support obligation. *Sherrod v. Wix*, 849 S.W.2d 780, 783 (Tenn. Ct. App. 1992).

In summary, we cannot say that the evidence preponderates against the trial court's holding that Mother's weekly child support obligation should be increased from $85 to $113. We reach this conclusion based upon two distinct lines of reasoning. First, assuming, as Mother argues, that a hearing before the trial court was held on February 18, 2003, we must assume, in the absence of a transcript or statement of the evidence, that there was sufficient evidence presented at that hearing to justify the trial court's decision to increase the support obligation. Second, even if Mother is

-6-

mistaken in her assertion that there was a hearing on February 18, 2003, and even if the evidentiary material that is before us does not justify the decreed increase in child support, we, nevertheless, must sustain the trial court's action because Mother's signature on the PPP, without any mention of a continuing objection to the increase, constitutes a waiver of her lack-of-a-significant-variance defense. If she erred in failing to state her continuing objection to an increase in child support, this error stands in the way of appellate relief. As we have previously indicated in this Opinion, the record before us demonstrates Mother's agreement to the increase. Tenn. R. App. P. 36(a) provides that an appellate court is not required to grant relief "to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." If child support in this case was improperly increased, Mother must bear some responsibility for the error. Accordingly, we decline to grant her relief with respect to the increase in her child support obligation.

## VIII.

The judgment of the trial court is affirmed. Costs on appeal are taxed to Mary Ann Gurganus Eure. This case is remanded to the trial court for enforcement of that court's judgment and for collection of costs assessed below, all pursuant to applicable law.

_____
CHARLES D. SUSANO, JR., JUDGE