IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 4, 2005 Session

## SANDRA E. FOX (GWIRTSMAN) v. HARRY E. GWIRTSMAN

**Appeal from the Circuit Court for Davidson County**
**No. 01D-1617     Marietta Shipley, Judge**

_____

**No. M2004-00664-COA-R3-CV - Filed September 6, 2005**

_____

Father appeals from a modification of the residential schedule for his three children which was triggered by Mother's move to another county and the resultant burden on the children of commuting to and from school. Because the evidence supports the trial court's decision, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

Larry Hayes, Jr., Nashville, Tennessee, for the appellant, Harry E. Gwirtsman.

Robert E. Kolarich, Nashville, Tennessee, for the appellee, Sandra E. Gwirtsman.

**OPINION**

This case was initiated by Ms. Fox ("Mother") asking the court to revise the parties' Parenting Plan so that the children would spend the majority of their time with her and allow Dr. Gwirtsman ("Father") standard visitation. Thereafter, Father filed a counter petition seeking a revision of the parenting arrangement and a decrease in child support. The trial court granted Mother's requested modifications, and Father appeals.

The parties to this action were granted a Final Decree of Divorce which incorporated a Marital Dissolution Agreement ("MDA") and a Parenting Plan for their three children on April 23, 2002. The MDA contained the following provision:

> Custody of the minor children born of this marriage shall be vested jointly in the parties. A Parenting Plan has been signed by the parties and is attached hereto and incorporated by reference into this Marital Dissolution Agreement. The primary

residence of the children shall be deemed and considered to be with the Father. The children shall remain at the schools where they are currently enrolled for a period of five (5) years so long as they are performing satisfactorily.

Under the terms of the Parenting Plan, the children lived with each parent according to a schedule whereby they were with Father six (6) days, from Thursday at 6:00 p.m. through Wednesday at 6:00 p.m., and with Mother eight (8) days, from Wednesday at 6:00 p.m. until Thursday at 6:00 p.m.

Prior to their divorce, the parties lived in Nashville, and Father remained in what had been the marital home. Within six months of the decree, Mother moved from Nashville to Murfreesboro in October of 2002. The next month, in November of 2002, Mother filed a Petition to Modify the Final Decree of Divorce. Mother sought the modification to allow the children to attend school in Rutherford County, to change their primary residence to Mother's residence in Rutherford County, and to revise the "visitation schedule" to grant Father standard visitation on alternate weekends and holidays. The material and substantial change of circumstance alleged by Mother in her petition was that the two younger children were not performing well in school. Mother also alleged that an additional material and substantial change of circumstance was that the "visitation schedule" provided for a "disruptive, unsettled and unstable living environment and daily schedule for the children." Mother does not allege that her move to Murfreesboro is a change in circumstance but basically alleges that the consequences resulting from the move are a material and substantial change so as to support a modification.

Father filed a counter petition seeking a modification of the Parenting Plan that would increase the children's time spent with Father and allow Mother specific visitation or residential time. The material change in circumstance alleged by Father relevant in this appeal is that Mother's move to Rutherford County disrupted the children's schedule requiring a lengthy commute to school in Davidson County while residing with Mother. Father also alleges that due to Mother's now successful business and due to his request that the children spend more time with him, then Father's child support should be reduced and/or terminated and Father should receive child support from Mother.

The trial court conducted a hearing on the parties' requests to modify their decree and Parenting Plan on September 3, 2003, and issued an order September 18, 2003. At the time of the hearing, Benjamin was 14, Mia was 12, and Gabriel was 7. The court heard testimony from Mother, Father, and the children in chambers.[1] The trial court found that there had been a change of circumstance since the time of the parties' decree, although it did not identify that change. The trial court made no specific finding about the children's best interest. The court ordered that Mother become the primary residential parent and provided that the children would reside with Father on

---

[1] The children's testimony was sealed.

alternate weekends,[2] and specified holidays, including almost all Jewish holidays. Father was granted six weeks of residential time in the summer. As for school, Gabriel and Mia will go to school in Rutherford County, and Benjamin will attend Hume Fogg in Nashville. The trial court did not grant Father any relief requested in his counter petition.

The sole issue raised on appeal by Father is whether the trial court erred by decreasing Father's residential time with the children. Father argues that the trial court erroneously modified the parties' agreed upon residential arrangement because there was no material change in circumstances warranting such a modification.

## I. FACTS

At the time of the hearing, Benjamin was in ninth grade at Hume Fogg,[3] Mia was in seventh grade at West End Middle School, and Gabriel was in second grade at Akiva (a private religious school). All of the schools are in Davidson County. Father is a psychiatrist who works and resides in Nashville. Mother operates a construction and home improvement business. The parties had lived under the shared parenting arrangement in the Parenting Plan during their separation and post-divorce for approximately two (2) years at the time of the hearing.

Three months after entry of the final decree, Mother purchased property and built a home in Murfreesboro. In October of 2002, Mother moved to Murfreesboro. At the hearing, Mother admitted that while moving to Rutherford County was a possibility at the time of the final decree, she had not positively decided at that time.[4] She testified that she looked for homes in Davidson and Williamson counties. Mother testified that much of her business was generated in the Murfreesboro area and she needed to live near her job sites. Mother testified that the logistics of getting three children to school in Nashville from Murfreesboro during her eight day residential period was difficult, but she testified that she was able to manage it.

The evidence presented to the trial court indicated that all three children were doing well in school.[5] The proof showed that while each parent had had outbursts around the children and that one has anger management issues, the proof also showed that both are loving, involved parents trying to come to an arrangement that is in their children's best interests. Mother had been the primary

---

[2]Since Benjamin stayed in Nashville schools, Father was allowed to keep him on those Sundays following his weekend visitation.

[3]At the hearing, the parties agreed that Benjamin should be allowed to remain at Hume Fogg. Presumably this is because that was his desire, he was doing well in school, and the hardship of commuting was not as great on him since he is older than his siblings.

[4]Shortly after the parties' divorce, Mother began living with a man from Murfreesboro whom she married a week before the hearing in this matter.

[5]While the possibility that one of the children may have an eating disorder was plead in Mother's petition, the proof did not support this allegation.

caregiver and Father had been less involved in raising the children. However, he had been seeking help to improve his parenting skills.

The proof showed that while all three children were doing well academically, they were also under stress because of the parenting arrangement and attendant travel back and forth. Although not due to an unwillingness on Father's part, Mother was able to be more available to the children due to the flexible nature of her work. The evidence showed that the children get along well with Mother's husband and that the children had settled in well in Mother's neighborhood.

## II. STANDARD OF REVIEW

The trial court's conclusions of law are reviewed "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Kendrick v. Shoemake*, 90 S.W.3d 566, 569-70 (2002); *Southern Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001). Our review of the trial court's findings of fact is *de novo* upon the record, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Kendrick*, 90 S.W.3d at 569-70; *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984). When the trial court makes no specific findings of fact, however, we must review the record to determine where the preponderance of the evidence lies. *Kendrick*, 90 S.W.3d at 569-70; *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997).

Because of the broad discretion given trial courts in matters of child custody, visitation, and related issues, including change in circumstances and best interests, and because of the fact specific nature of such decisions, appellate courts are reluctant to second-guess a trial court's determination regarding custody and visitation. *Parker v. Parker*, 986 S.W.2d 557, 563 (Tenn. 1999); *Nelson v. Nelson*, 66 S.W.3d 896, 901 (Tenn. Ct. App. 2001); *Gaskill v. Gaskill*, 936 S.W.2d 626, 631(Tenn. Ct. App. 1996)). Accordingly, this court will decline to disturb a parenting arrangement fashioned by a trial court unless that decision is based on the application of incorrect legal principles, is unsupported by a preponderance of the evidence, or is against logic or reasoning. *Eldridge v. Eldridge*, 42 S.W.3d at 85; *Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997). Further, our analysis is governed by directive that, "It is not the function of appellate courts to tweak a visitation order . . . . When no error is evident from the record, the trial court's ruling must stand." *Eldridge*, 42 S.W.3d at 88.

### III. CHANGE OF CIRCUMSTANCES

Mother's petition to modify was filed in November of 2002, the matter was heard on September 3, 2003, and the trial court's decree was entered on September 16, 2003. When the matter was heard and decided by the trial court, the following version of Tenn. Code Ann. § 36-6-101(a)(2)(B) (Supp. 2003), in pertinent part, was in effect[6]:

> (B)    If the issue before the court is a modification of the court's prior decree pertaining to custody or a residential parenting arrangement, the petitioner must prove by a preponderance of the evidence a material change in circumstance. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance may include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances which make the parenting plan no longer in the best interest of the child.
>
> (i)    In each contested case, the court shall make such a finding as to the reason and the facts that constitute the basis for the custody determination.[7]

Once a valid order of custody or residential parenting schedule has been entered, the party petitioning to change that order must prove both that a material change of circumstances has occurred and that a change of custody or residential schedule is in the child's best interest. *Kendrick v. Shoemake*, 90 S.W.3d 566, 575 (Tenn. 2002). Such determinations involve a two-step analysis. *Cranston v. Combs*, 106 S.W.3d 641, 644 (Tenn. 2003); *Kendrick*, 90 S.W.3d at 570. Only after a threshold finding that a material change of circumstances has occurred is the court permitted to go on to make a fresh determination of the best interest of the child. *Kendrick*, 90 S.W.3d at 569; *Blair v. Badenhope*, 77 S.W.3d 137, 150 (Tenn. 2002); *see also* Tenn. Code Ann. § 36-6-101(a)(2)(B) and (C).

In determining whether such a change of circumstances has occurred, the court should consider several factors which have proved themselves a sound basis for the determination. *Blair*, 77 S.W.3d at150.

> Although there are no bright-line rules for determining when such a change has occurred, there are several relevant considerations: (1) whether the change has occurred after the entry of the order sought to be modified; (2) whether a change was not known or reasonably anticipated when the order was entered; and (3) whether a change is one that affects the child's well-being in a meaningful way.

---

[6]The statute has since been amended to create separate provisions for revision of a custody order and revision of a residential parenting schedule. See Tenn. Code Ann. § 36-6-101(a)(2)(B) and (C) (Supp. 2004).

[7]To the extent the trial court did not make specific findings, we will review the record ourselves to determine the preponderance of the evidence. *Kendrick*, 90 S.W.3d at 569-70.

*Cranston*, 106 S.W.3d at 644, citing *Kendrick*, 90 S.W.3d at 570, and *Blair*, 77 S.W.3d at 150. As the statute and case law now make clear, a material change of circumstance does not require a showing of a substantial risk of harm to the child. Tenn. Code Ann. § 36-6-101(a)(2); *Cranston*, 106 S.W.3d at 64; *Kendrick*, 90 S.W.3d at 570. Additionally, "a parent's change in circumstances may be a material change in circumstances for the purposes of modifying custody if such a change affects the child's well-being." *Kendrick*, 90 S.W.3d at 570.

Thus, to justify modification, the change must have occurred after entry of the order sought to be modified, must be one that was not known or reasonably anticipated when the original order was entered, and must affect the child's well-being in a meaningful way.

From our review of the record, it is clear that the only circumstances that changed were triggered by Mother's move to Murfreesboro.[8] The evidence showed that Mother's move to Murfreesboro clearly met two of the requirements in *Kendrick*. First, the move occurred after the decree. Second, living in Nashville and Murfreesboro affected the children's well being in a meaningful way. The proof showed the younger two children were stressed by living part time in one city while going to school in another. That consequence is not surprising when children spend almost four hours per day commuting, leaving little time for anything but homework, meals, and sleep. A significant disruption in their lives was a result. While their grades had not been adversely affected at the time of the hearing, there is clearly evidence in the record that the arrangement was taking a toll on them.

It is on another factor that Father relies in arguing that Mother failed to prove a material change in circumstances. That is the requirement that the change must be one that was not known or reasonably anticipated at the time of the prior order sought to be modified. Given the timing of Mother's move and attendant circumstances, Father argues Mother either knew or reasonably anticipated her move to Murfreesboro. Mother denied entering into the existing Parenting Plan with the intent to then move to Murfreesboro. Father retained the marital home, and Mother was required to find a new residence. At least shortly after entry of the previous order, Mother started looking at homes in various places, including in other counties. She explained why her business necessitated her move and how her business has developed in Murfreesboro. The trial court implicitly found Mother's explanation credible, and we will defer to the trial court's judgment on that issue.

Even if Mother was contemplating a move at the time of entry of the original order, the consequences to the children of a specific move was not known at that time. We conclude that a preponderance of the evidence supports a finding that there was a material change of circumstances, *i.e.*, due to Mother's move, the residential arrangement in the Parenting Plan now creates a disruptive, living arrangement and daily schedule that causes hardship to the children.

After the threshold issue of change of circumstance has been found to exist, then it must be determined whether a modification in the residential schedule is in the child's best interest.

---

[8]While Mother alleged several changes of circumstance, the proof in large part showed that either she was factually incorrect or the circumstances had existed before the original decree.

*Cranston,* 106 S.W.3d at 644. Best interest is determined by considering all relevant factors, including those set out in Tenn. Code Ann. § 36-6-106(a) (factors to consider in a custody determination) or § 36-6-404(b) (factors to consider in establishing a residential schedule).

As we have discussed, the evidence supported the finding that the children's well being was affected by the commuting time to get them to school and by the fact they spent part of some school weeks in different homes. A residential schedule allowing the children to reside in one home during the school week is in their best interests, as is a plan allowing them to attend school close to the residence where they spend most of their time. In determining which home would best further the best interests of the children, the trial court heard testimony that while Father was improving his parenting skills, the Mother had been the children's primary caretaker. Father acknowledged that switching primary residential placement of the children was problematic and that the children would rather spend more time with their Mother.[9] Based upon the foregoing and the record as a whole, we find that the modification ordered by the trial court is in the children's best interests, according to a preponderance of the evidence.

## IV. REQUIREMENT OF PARENTING PLAN

It is necessary for us to remand this matter to the trial court so that a modified parenting plan may be filed as required by statute. Tenn. Code Ann. §§ 36-6-404(a) and -405(a).[10] Accordingly, we remand for entry of a permanent parenting plan consistent with the trial court's order.

For the reasons stated, we affirm the trial court's judgment, but remand the case to the trial court for entry of a revised parenting plan. Costs of the appeal are taxed to the appellant, Harry E. Gwirtsman.

_____
PATRICIA J. COTTRELL, JUDGE

---

[9] Father's main concern was that his residential time with the children was reduced by the modified plan.

[10] In addition, Tenn. Code Ann. § 36-6-405(a) requires that: "In a proceeding for a modification of a permanent parenting plan, a proposed parenting plan shall be filed and served with the petition for modification and with the response to the petition for modification." The record before us does not include a proposed parenting plan attached to either Mother's request to modify or Father's response.