IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 8, 2010 Session

## LOUISE Y. LEDBETTER v. CHRISTOPHER DOUGLAS DIRR

**Appeal from the Chancery Court for Maury County**
**No. 96-157      Robert L. Jones, Chancellor**

---

**No. M2010-00550-COA-R3-CV - Filed May 3, 2011**

---

In this post-divorce proceeding, Father appeals the trial court's visitation determination and classification of previously awarded attorney's fees. We affirm the trial court's judgment in part, vacate in part, and remand the case for entry of a parenting plan.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part; Vacated in Part; Case Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P. J., M.S., and ANDY D. BENNETT, J., joined.

Karla C. Hewitt, Nashville, Tennessee, for the appellant, Christopher Douglas Dirr.

Mark A. Free, Columbia, Tennessee, for the appellee, Louise Y. Ledbetter.

## MEMORANDUM OPINION[1]

### I. Facts and Procedural History

Dr. Louise Ledbetter ("Mother") and Christopher Dirr ("Father") were divorced September 3, 1997 on the grounds of inappropriate marital conduct. The Final Decree of Divorce set Father's child support obligations, granted Mother sole custody of the parties'

---

[1] Tenn. R. Ct. App. 10 states:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

two children, awarded Father supervised visitation[2] twice per week and on alternating weekends, and divided the parties' property. The parties have been involved in numerous post-divorce proceedings, one of which led to this Court's decision in *Dirr v. Dirr*, No. M2001-03049-COA-R3-CV, 2003 WL 22345479 (Tenn Ct. App. Oct. 15, 2003) which, among other things, upheld an award of $22,000.00 in attorney's fees to Mother.

The present appeal is from the trial court's February 5, 2010 "Final Restated Order Concerning Custody, Child Support, Contempt, and Attorney's Fees." The Order derives from Mother's "Petition to Modify Visitation and for Contempt" filed on May 18, 2007 in which she asked the court to modify the children's visitation schedule and to find Father in contempt for his failure to pay child support and previously awarded attorney's fees.[3] In support of the motion, Mother stated that the children, "have become very vocal in their dissatisfaction with a continuation of the previous entered visitation schedule." Father answered and filed a "Counter-Petition to Modify Visitation, Child Support, and for Contempt" in which he alleged that Mother was prohibited from collecting her attorney's fees because the fees were a debt discharged in his 2005 bankruptcy proceeding. Father also alleged that a material change in circumstances had occurred and that it was in the children's best interest to have unsupervised and increased visitation with him.

On November 26, 2007, Father filed a motion in the United States Bankruptcy Court for the Middle District of Tennessee ("Bankruptcy Court") alleging that Mother violated its discharge injunction when she filed the action to collect the attorney's fees and seeking to hold Mother in contempt. On February 13, 2008, the Bankruptcy Court entered an "Order of Abstention" delaying its ruling on Father's motion until the trial court clarified whether some or all of the $22,000.00 award was in the nature of support or whether the amount was purely attorney's fees. On May 12, 2008, the trial court entered an "Order Regarding Request of the United States Bankruptcy Court for the Middle District of Tennessee" which specified the portions of the $22,000.00 award which should be considered support or attorney's fees and an "Order Concerning Custody;" Father appealed both orders. On appeal, this Court determined that the trial court's May 2008 order regarding custody was not a final judgment and, consequently, we did not have jurisdiction to adjudicate the appeal. As a result, the appeal was dismissed and the case remanded for entry of a final order. *Ledbetter*

---

[2] Father's visitation was to be supervised because the trial court found that Father's "puppy-dog kissing" or "tongue touching" with his minor daughter was inappropriate conduct which warranted supervised visitation.

[3] On November 26, 2007, Mother amended her Petition and removed her request to hold Father in contempt for his failure to pay attorney's fees.

*v. Dirr*, No. M2008-01285-COA-R3-CV, 2009 WL 2957911 (Tenn. Ct. App. Sept. 15, 2009).

On January 21, 2010 the trial court held a hearing at which it discussed with counsel, *inter alia*, the then current status of the case, testimony in the case prior to remand,[4] and compliance with the remand. On February 5 the court entered a "Final Restated Order Concerning Custody, Child Support, Contempt, and Attorney's Fees," stating, "[t]he Court believes this is a final order, in accordance with Rule 54, and subject to appeal if either party chooses." With respect to Father's visitation, the trial court stated as follows:

4. Mother has failed to show sufficient inappropriate conduct of Father, since November 2001, to carry the burden of proof necessary to deny Father future visitation or parenting time.

5. The increased age and communication skills of the children are material changes that make further, direct, first person supervision of Father's visitation with his children inappropriate and unnecessary, and such is hereby terminated. Mother may, at her own expense, send the current supervisor, Donna Pogue, or another of her choice, to follow Father and the children during Father's visitation; but said monitoring shall be done discretely at a distance, and without interference between Father and children and so that other persons would not be aware of any such monitoring.

6. This Court shall not order mandatory visits between Father and children, thus eliminating the need for a Parenting Plan, until Father comes before the Court with a positive counseling plan involving himself and his children and shows positive progress in the children's attitude towards spending time with the Father, after which the Court may reestablish at least fifty days per year.

7. The prohibition against overnight visits shall remain in force. This prohibition may be reviewed when the Father petitions and presents evidence of the progress anticipated in the foregoing paragraphs.

8. Father was deprived of visitation time which he was entitled to under the prior Orders of this Court, but some of the deprivation came from

---

[4] The parties and others, including the children, had testified at a hearing held on March 31, 2008.

the children's refusal to visit, which the Court found to be justified because of the Father's conduct after the children testified in open court.

The trial court set monthly child support at $710.00 and awarded Mother $9,973.00 in arrearages. The trial court dismissed the petitions for contempt stating, "neither party adequately satisfied the Court of willful contempt against the other party." At the request of the Bankruptcy Court, the trial court made findings relative to the $22,000.00 in attorneys fees awarded Mother in November 2001.

Father appeals and articulates the following issues for our review:

I. Whether the trial court abused its discretion by *de facto* terminating the Appellant's visitation?

II. Whether the trial court erred in classifying the award of attorney fees from the November 6, 2001 Order after the Order had become final and had been upheld on appeal?

## II. Standard of Review

Review of the trial court's findings of fact is *de novo* upon the record accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Kaplan v. Bugalla*, 199 S.W.3d 632, 635 (Tenn. 2006). Our review of the trial court's determinations regarding questions of law is *de novo* with no presumption of correctness. *See Staples v. CBL Associates, Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000); *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997).

## III. Analysis

### A. Father's Visitation

A trial court must engage in a two-step analysis when deciding whether to modify an existing parenting arrangement. *Cranston v. Combs*, 106 S.W.3d 641, 644 (Tenn. 2003); *see also Hansen v. Hansen*, No. M2008-02378-COA-R3-CV, 2009 WL 3230984, at *3 (Tenn. Ct. App. Oct. 7, 2009) ("Alteration of a parenting plan cannot be accomplished on a whim."). Specifically, a party petitioning to modify a custody decree must prove both (1) that a material change of circumstances has occurred and (2) that a change of the parenting arrangement is in the child's best interest. *Kendrick v. Shoemake*, 90 S.W.3d 566, 575 (Tenn. 2002). In the present case, neither party contests the trial court's finding of a material

change in circumstance; consequently, we turn our analysis to the best interests of the children.

Father contends that the trial court abused its discretion by "*de facto* terminating or suspending his visitation with his children." In support of this contention, he cites the trial court's finding that Mother failed to carry her burden to show that Father's visitation should be denied, as well as the finding of a material change of circumstance which eliminated the necessity for supervised visitation.

The trial court discontinued Father's supervised visitation, but did not order "mandatory visits" between Father and the children; Father contends that this constituted error. While not explicitly engaging in a best interests analysis, the court made the following remarks related to the best interests of the children:

> Now, let's discuss custody issues. I might as well give you a little heads up on that. This Court hasn't heard enough proof to deny visitation for the rest of these children's minority, and yet this Court, having been sympathetic with Mr. Dirr before, is now sympathetic with these children.
> . . .
> As much frustration as the Court may feel with the case and the parties, I'm not going to throw the children into an impossible and traumatic situation to undo the wrongs that the parents and the Court may have been involved in years gone by.

We are mindful that the trial court has more than a decade of history with the parties and children in this case and that "[t]rial courts are vested with wide discretion in matters of child custody." *Koch v. Koch*, 874 S.W.2d 571, 575 (Tenn. Ct. App. 1993). Thus, we will not interfere with the decision of the trial court absent some abuse of the trial court's discretion. *See Bueno v. Todd*, No. W2005-02164-COA-R3-CV, 2006 WL 2106006, at *5 (Tenn. Ct. App. July 31, 2006). In light of the history of the case, as recounted in the November 2001 order, and the children's unequivocal testimony in 2008 that they did not want to visit their Father, it is clear that the court gave thoughtful and deliberate consideration to its order; the record does not support a finding that the trial court abused its discretion in failing to order mandatory visits between Father and the children. *See* Tenn. Code Ann. § 36-6-106(a)(7)(A) (listing a number of factors that courts should consider in determining the best interests of a child, including "[t]he reasonable preference of the child, if twelve (12) years of age or older").

Tenn. Code Ann. § 36-6-101(a)(2)(B)(ii), however, requires that a parenting plan be incorporated into a decree which modifies an existing custody order. Thus, the trial court

should have incorporated a parenting plan into the Final Restated Order and we must vacate the judgment in part and remand the case for entry of a parenting plan. We encourage the court to enter a plan which will facilitate the court's request for Father to engage in a "positive counseling plan."[5]

## B. Request from Bankruptcy Court

Father contends that the action of the trial court in responding to the request of the Bankruptcy Court was a "modification" to the November 6, 2001 Order in violation of Tenn. R. Civ. P. 52.02, 59.04, 60.01, and 60.02; he does not argue that the trial court improperly classified the attorney's fees.

In its Order of Abstention entered February 13, 2008, the Bankruptcy Court acknowledged that Father's "discharge order is silent and does not mention the $22,000 amount and it does not address the issue of whether some or all of said figure was in the nature of support." In granting Mother's Motion for Abstention, the Bankruptcy Court stated:

> A hearing is currently scheduled before Chancellor Robert Jones of the Chancery Court for Maury County, Tennessee on March 31, 2008 to consider the motion to modify visitation between Dr. Ledbetter and Mr. Dirr and a child support arrearage. At such time, the Court informed the parties that would be appropriate to allow Chancellor Jones to clarify whether some or all of the $22,000 amount reflected in Chancellor Jones' Order of November 6, 2001 is in the nature of support or whether the entire amount should be considered as attorneys fees alone.

The trial court's action did not amount to a modification; rather, the court responded to the the Bankruptcy Court's request. In so doing, the trial court stated as follows: "(f) thirty percent (30%) of $22,000.00 of post-divorce litigation expenses awarded to Mother related to the support and financial well-being of the parties' children; and (g) the remaining seventy percent (70%) of $22,000.00 of post-divorce litigation expenses awarded to Mother involved

---

[5]The language of paragraph 6 of the Final Restated Order that the trial court will not order mandatory visits "until Father comes before the Court with a positive counseling plan involving himself and his children and shows positive progress in the children's attitude towards spending time with the Father" gives the court and the parties little guidance on how the plan is to be developed, how to present evidence of "positive progress in the children's attitude," or how such evidence should be evaluated. In addition, because the court did not order the children to exercise visitation with Father, it is not clear how the children would participate in the development of a plan which would be presented to the court and how they would participate in the counseling, if the plan were approved.

custody and visitation rather than support." The trial court did not err in complying with the Bankruptcy Court's request and we affirm its action in that regard.

## IV. Conclusion

For the foregoing reasons, the judgment of the Maury County Chancery Court is VACATED IN PART, and the case is remanded to the Maury County Chancery Court for entry of a parenting plan. In all other respects, the judgment is affirmed.

_____
RICHARD H. DINKINS, JUDGE